UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Bryan Brown,
    Petitioner

    v.                                    Civil No. 09-cv-139-SM
                                        Opinion No. 2010 DNH 163

Warden, New Hampshire
State Prison,
    Respondent

**O R D E R**

In the fall of 2006, a state grand jury returned an indictment charging Bryan Brown with five counts of aggravated felonious sexual assault and one count of witness tampering. Shortly thereafter, he was charged by information with an additional three misdemeanor counts of sexual assault. The sexual assault charges arose out of sexual contact Brown had with his biological daughter, when she was between the ages of 11 and 13. The witness tampering charge arose out of Brown's efforts to prevent his daughter from reporting his conduct to the police.

The evidence against Brown was substantial, including semen that had been recovered from his daughter's vagina and, through DNA testing, identified as Brown's. And, because Brown had previously been convicted of similar sexual assaults upon a child, he was facing a substantial term of imprisonment if convicted. After he was afforded a series of trial continuances,

Brown pleaded guilty on May 8, 2008, pursuant to a negotiated plea agreement.

Brown, now seeks federal habeas corpus relief, asserting that his "Fourteenth Amendment due process rights were violated when he was convicted upon entry of a guilty plea that was not entered voluntarily." Report and Recommendation (document no. 12) at 6 (construing petitioner's claims). See generally 28 U.S.C. § 2254. In essence, Brown says his attorney had a conflict of interest and, therefore, he was denied effective assistance of counsel at his change of plea hearing. Accordingly, he asks this court to vacate his conviction based upon his allegedly improvident plea.

The State denies that any of Brown's constitutional rights were violated in connection with his decision to plead guilty and moves for summary judgment. For the reasons discussed below, the State's motion is granted.

**Standard of Review**

I.  Habeas Corpus Generally.

Since passage of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), the power to grant federal habeas relief to a state prisoner with respect to

claims adjudicated on the merits in state court has been substantially limited.  A federal court may not disturb a state conviction unless the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  Additionally, a habeas petitioner seeking relief under that provision faces a substantial burden insofar as "a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).

Alternatively, habeas relief may be granted if the state court's resolution of the issues before it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  See also Williams v. Taylor, 529 U.S. 362, 399 (2000).  The Supreme Court explained the distinction between decisions that are "contrary to" clearly established federal law, and those that involve an "unreasonable application" of that law as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas

>   court may grant the writ if the state court identifies
>   the correct governing legal principle from [the
>   Supreme] Court's decisions but unreasonably applies
>   that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13.  The Court also noted that an "incorrect" application of federal law is not necessarily an "unreasonable" one.

>   The most important point is that an <u>unreasonable</u>
>   application of federal law is different from an
>   <u>incorrect</u> application of federal law . . . .  Under §
>   2254(d)(1)'s "unreasonable application" clause, then, a
>   federal habeas court may not issue the writ simply
>   because that court concludes in its independent
>   judgment that the relevant state-court decision applied
>   clearly established federal law erroneously or
>   incorrectly.  Rather, that application must also be
>   unreasonable.

Id. at 410-11 (emphasis in original).

Finally, it probably bears noting that a state court need not rely upon, nor need it even cite, Supreme Court precedent in order to avoid resolving a petitioner's claims in a way that is "contrary to" or involves an "unreasonable application of" clearly established federal law.  See Early v. Packer, 537 U.S. 3, 8 (2002) ("Avoiding these pitfalls does not require citation of our cases - indeed, it does not even require <u>awareness</u> of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.") (emphasis in original).

II.  <u>Conflicted Counsel and Ineffective Assistance Claims</u>.

Brown asserts that the state trial court deprived him of his constitutionally protected rights when, approximately 10 months after he had been sentenced, it denied his motion to withdraw his guilty plea on grounds that his counsel was operating under a conflict of interest.  In discussing the Sixth and Fourteenth Amendment implications of an attorney with a conflict of interest representing a criminal defendant, the Supreme Court has held that:

> [I]nadequate assistance does not satisfy the Sixth Amendment right to counsel made applicable to the States through the Fourteenth Amendment.  A guilty plea is open to attack on the ground that counsel did not provide the defendant with reasonably competent advice.
>
> \*   \*   \*
>
> [A] defendant who shows that a conflict of interest <u>actually affected the adequacy of his representation</u> need not demonstrate prejudice in order to obtain relief.  But until a defendant shows that his counsel <u>actively represented conflicting interests</u>, he has not established the constitutional predicate for his claim of ineffective assistance.

<u>Cuyler v. Sullivan</u>, 446 U.S. 335, 344, 349-50 (1980) (citations omitted) (emphasis supplied).  In other words, the mere "possibility of conflict is insufficient to impugn a criminal conviction.  In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual

5

conflict of interest adversely affected his lawyer's performance." Id. at 350. See also Mickens v. Taylor, 535 U.S. 162 (2002); Mountjoy v. Warden, N.H. Prison, 245 F.3d 31 (1st Cir. 2001).

With those principles in mind, the court turns to Brown's petition and the State's motion for summary judgment.

## Background

As noted above, in late 2006, Brown was charged with five counts of aggravated felonious sexual assault, one count of witness tampering, and three misdemeanor counts of sexual assault. Trial was originally scheduled for June 4, 2007. After four continuances - three of which were sought by Brown - trial was set for April 7, 2008.

On March 10, 2008, however, Brown filed a motion to "Dismiss/Disqualify Private Counsel," in which he expressed his general dissatisfaction with his retained counsel's performance. But, at a pretrial conference on March 26, Brown's counsel informed the court that he believed Brown intended to withdraw that motion. The court then questioned Brown directly and he confirmed his desire to withdraw the motion.

> Court: We had some scheduling problems . . . We've been trying to work it out. Your attorney needs to make a call about his schedule . . . I need to be sure that he is your attorney and that you want him to continue to represent you.
>
> Brown: Yes.
>
> Court: I mean no disrespect to either you or your attorney, but you did file a motion, raising the status of counsel. At this point, do you wish to have this attorney continue to represent you, sir?
>
> Brown: Yes, sir.
>
> Court: All right. Do you understand that by saying that, what I'm going to do is mark your motion concerning the status of counsel as withdrawn, a legal term meaning that you're taking it away, it's not an issue for me to consider anymore. Is that what you want me to do?
>
> Brown: Yes, <u>Your Honor. I'd . . . also like a continuance</u> because I need to go over -
>
> Court: That's something that we've talked about . . . and your attorney has told me [and] you've now confirmed that it is your request to continue, and that is something that we're going to continue to talk about this morning.

Transcript of Pretrial Conference (document no. 15-3) at 11-12 (emphasis supplied). Brown's reference to his desire to obtain yet another continuance of his trial was, perhaps, telling. It suggested that his efforts to obtain new trial counsel were designed simply to delay his forthcoming trial - a point that was not lost on the trial court.

After the court determined that Brown did not wish to discharge his attorney, it agreed to continue the trial once again. The final pretrial conference was set for May 8, 2008, and trial for the week of May 27, 2008. Id. at 15-16. The court made clear, however, that there would be no further continuances. Id. at 14.

A week before the final pretrial conference, however, Brown once again sought to discharge his attorney. In his "Motion to Dismiss Counsel Based on a Conflict of Interest" Brown alleged that his attorney had coerced him into withdrawing the prior motion, failed to keep various (undescribed) promises, and lied to him about the possibility of negotiating a more favorable plea agreement with the State, under which he would serve only seven years in prison. Brown also noted that he had filed a professional misconduct complaint against his attorney with the New Hampshire Professional Conduct Committee. Accordingly, Brown claimed his attorney now had a conflict of interest, arising from his having filed a complaint. That same day, at Brown's request, his attorney filed a motion to withdraw. The State objected, asserting that Brown was, once again, simply trying to delay his trial.

On May 6, the trial court held a hearing on Brown's motion. At that hearing, the court noted that the case had already been continued several times, that Brown was unequivocally informed that there would be no further continuances, and that the court believed Brown was doing whatever was necessary to delay his trial:

> Mr. Brown, I took the extra step, not only in the course of reviewing the entire file, but I also queued up the hearing from March 26, so that I could hear precisely what occurred during that hearing, and did that so I could better appreciate Judge Houran's order that there [would] be absolutely no further continuances of this matter.
>
> I also heard that he questioned you directly regarding whether or not you wanted to continue with this lawyer, and you represented to the Court that you did. Now that was March 26. It was specifically continued, at defense counsel's request, you conferred with your counsel to confirm that date. You actually asked for the continuance and it was approved. But a part and parcel of that is there was not going to be any further continuances.
>
> So, your motion to substitute counsel is denied. Your choice is to proceed pro se, make amends with your current counsel, or have current counsel serve as a back-up, where you would represent yourself, but he would provide you with the legal - a source of legal advice, if necessary. But this Court is not going to continue it because I do think the victim has rights in this case, and <u>I also have to wonder whether you have trial phobia in the sense that you just don't want to go to trial on this, and you'll do whatever is necessary to postpone this until something happens to the victim or something else occurs that makes you[r] chances before a jury more palatable to you</u>.
>
> So, you can have your choice, sir. You can reflect on it. . . . Do you understand?

Transcript of Motions Hearing (document no. 15-4) at 6-8 (emphasis supplied).  In support of the court's view that Brown was, once again, attempting to postpone his trial, the State pointed out that in several recent recorded telephone conversations from jail, Brown told friends and family members that he was quite satisfied with counsel's performance and believed counsel was doing his best to assist him.  Id. at 10-11.[1]

Eventually, at the request of Brown's counsel, the court afforded Brown a few days (until the final pretrial conference) to decide how he wished to proceed.  And, in the interim, a second attorney, Attorney Hawkes (who had represented Brown in a prior criminal proceeding) would meet with and advise Brown on the matter.  Id. at 14-16.

---

[1] Brown also apparently made statements that substantially undermined his claim that retained counsel lied to him about the existence of a plea offer from the State involving a seven year term of imprisonment.  See Transcript of Motions Hearing (document no. 15-4) at 10 (noting that in a taped conversation from jail with his wife on March 26, 2008, Brown made specific reference to the State's original offer of 35 years (not seven years), and told her that the State's current offer was for a sentence of 20 years in prison).  Given Brown's prior convictions, it appears that if he had been convicted at trial, he would have faced a mandatory sentence of life in prison, without the possibility of parole, see N.H. Rev. Stat. Ann. ch. 623-A:10-a III - a fact that makes it unlikely that the State would have considered a negotiated sentence of seven years.

On May 8, 2008 - the date originally scheduled for the final pretrial conference - Brown decided that he wished to withdraw his pending motion to discharge retained counsel and plead guilty. Accordingly, the State made a proffer of the facts it believed it could prove if the case went to trial. Defense counsel acknowledged those facts and stated that Mr. Brown did not contest them. Transcript of Change of Plea Hearing (document no. 15-5) at 10. The Court directly addressed Brown, asking a series of questions to determine whether he fully understood the charges against him, the important rights that he was waiving by entering guilty pleas, and various substantive terms of his plea agreement. Id. at 11 - 14. The court also specifically addressed the issues that Brown had previously raised about potential conflicts with his retained counsel.

> Court: And did you have any questions of your counsel concerning any of those rights?
>
> Brown: No, sir.
>
> Court: And in review[ing] this, I assume you reviewed this form, and in discussing this case with your counsel, you've gone over the facts with him and you've cooperated with him, so he could form a good assessment as to what he ought to do representing you?
>
> Brown: Yes, Your Honor.
>
> Court: And, he discussed with you any defenses that you might have to this?
>
> Brown: Yes, Your Honor.

> Court: I know that you filed earlier, in March, a motion for new counsel, and you renewed that [motion], and I issued an order that we were going forward, either on a pro se basis or with present counsel at your shoulder or behind you assisting. That took place a few days ago. Am I correct that you have spoken with Attorney Hawkes and your current counsel in coming to the decision to enter into this plea?
>
> Brown: Yes, Your Honor.
>
> Court: So you've had the advice of and access to two counsel in that process?
>
> Brown: Yes, Your Honor.

Id. at 11 - 12. The court then specifically asked Brown if he was satisfied with the advice that he had received from both retained counsel and Attorney Hawkes.

> Court: And, as a result of [your consultations with those attorneys], you are satisfied with the representation of your current counsel, particularly with the assistance of Attorney Hawkes?
>
> Brown: That's correct.
>
> Court: All right. Has anyone put any pressure or coercion on you to enter into this plea?
>
> Brown: No, sir.
>
> Court: Am I correct, sir, that you[r] entry into this - entered into this negotiated plea because you are, in fact, guilty of the charges that were reviewed by the State earlier?
>
> Brown: Yes, Your Honor.
>
> Court: You're guilty of each one of those? You're under oath, and you're telling me that you're guilty, correct?

>   Brown:     Yes, Your Honor.

Id. at 12-13.  So, to the extent Brown's retained counsel's alleged conflict of interest was waivable, Brown knowingly and voluntarily waived it.

After completing its colloquy with Brown, the court accepted his guilty pleas and adjudicated him guilty.  Id. at 14.  Then, on May 23, 2008, pursuant to Brown's negotiated plea agreement with the State, the court sentenced Brown to 20 to 40 years of imprisonment.  Approximately ten months later, in March of 2009, Brown filed a motion to withdraw his guilty pleas, once again asserting (contrary to his sworn testimony at the change of plea hearing) that his trial counsel provided deficient representation and claiming that counsel was operating under a conflict of interest.  The trial court denied that motion.  And, on appeal, the New Hampshire Supreme Court affirmed.  State v. Brown, No. 2009-0298 (March 3, 2010).

## Discussion

Perhaps the clearest statement of Brown's argument is set forth in his appellate brief to the New Hampshire Supreme Court.

>   On March 31, 2009, Brown moved to withdraw his guilty
>   plea.  Brown argued that a conflict of interest had
>   arisen between [retained counsel] and himself, because
>   Brown had alleged professional misconduct.  If Brown

> plead guilty he would be legally barred from pursuing a claim of malpractice against [retained counsel], <u>so therefore, [retained counsel] had a material interest in seeing Brown plead guilty</u>. Brown had a right, under the federal and state due process clauses, to be represented by unconflicted counsel. Therefore the court's order that Brown either plead guilty, proceed to trial with [retained counsel] or proceed pro se rendered his plea involuntary.

Brief for Appellant (document no. 15-1) at 9 (citations omitted) (emphasis supplied).

In resolving Brown's claims, the New Hampshire Supreme Court did not determine whether counsel's alleged conflict was waivable and, if so, whether Brown waived it. Nor did it decide whether retained counsel had an actual conflict of interest. Instead, the court found that, even assuming retained counsel had a conflict of interest, none of Brown's state or federally protected constitutional rights were violated and, therefore, Brown was not entitled to withdraw his plea:

> We cannot say, upon this record, that the defendant has met his burden. Even if we assume that [retained counsel] had an actual conflict of interest that rendered his assistance ineffective, it does not necessarily follow that the defendant was not afforded effective assistance of counsel in entering the guilty plea. The defendant did not consult solely with [retained counsel]. He was also advised by [Attorney] Hawkes. The defendant affirmed to the court that he was satisfied "particularly with the assistance of Attorney Hawkes," and that his plea was being entered voluntarily and without "pressure or coercion." The defendant does not now argue that Hawkes' assistance was ineffective or otherwise insufficient, nor does he

14

> contend that Hawkes' representation was or could have
> been affected by [retained counsel's] alleged conflict
> of interest.  Thus, whether [retained counsel] should
> have been removed as counsel is of no consequence to
> whether the defendant's plea was voluntary.
> Accordingly, there was no manifest injustice and the
> trial court did not unsustainably exercise its
> discretion in denying the defendant's motion to
> withdraw his plea.  Because the State Constitution
> offers at least as much protection as the Federal
> Constitution with regard to the defendant's claims of
> error, we reach the same conclusion under the Federal
> Constitution.

State v. Brown, No. 2009-0298, slip op. at 3.


Based upon the developed record, it is clear that Brown is not entitled to habeas relief.  The record establishes that, in addition to the advice provided by retained counsel, Brown also benefitted from legal advice given by Attorney Hawkes - who met with Brown on both May 6 and again on May 7, 2008, to advise him on whether he should accept the plea offered by the State or go to trial.  See Transcript of Motions Hearing (document no. 15-4) at 14.  Moreover, Brown specifically acknowledged, under oath, that he was satisfied with the advice received from both attorneys and, specifically, Attorney Hawkes.  Transcript of Plea Hearing (document no. 15-5) at 12.  And, as the state supreme court noted, Brown never asserted (nor does he now assert) that Attorney Hawkes' assistance was ineffective or otherwise insufficient, nor did Brown claim that Attorney Hawkes'

15

representation was or could have been affected by retained counsel's alleged conflict.

Given those well-established facts, the state court concluded that even if retained counsel had been operating under a conflict of interest, Brown was afforded constitutionally effective and adequate legal counsel, given Attorney Hawkes' supplemental representation and advice.  Brown has not identified (and the court has not found) anything in the record which might suggest that the state supreme court's decision was "based on an unreasonable determination of the facts in light of the evidence presented," 28 U.S.C. § 2254(d)(2).  Nor has he shown that the state court's decision was contrary to, or involved an unreasonable application of, the constitutional principles articulated by the Supreme Court in Cuyler.  See 28 U.S.C. § 2254 (d)(1).

Even if this court were to review Brown's habeas corpus petition under the more petitioner-friendly de novo standard, the outcome would be no different.  First, it is not entirely clear (and Brown has certainly not shown) that merely filing a misconduct complaint against an attorney necessarily places that attorney in a conflict of interest situation.  As some courts have noted, an attorney who believes that he or she might be

16

investigated for professional misconduct would have an even greater incentive to provide thoughtful, well-researched advice to the client.  See, e.g., People v. Jones, 811 P.2d 757, 769 (Cal., 1991) ("Nor would, as defendant contends, any fear by counsel that his conduct might subject him to discipline give rise to a conflict of interest.  It would appear that fear of investigation by the State Bar would inspire an attorney to perform more, rather than less, competently.").  And, even assuming that Brown's retained counsel was operating under a conflict of interest, many such conflicts can be waived - particularly when, as here, the client had access to and received supplemental advice from independent legal counsel.  Again, Brown has not shown that the conflict under which his counsel allegedly operated was not waivable or that his waiver of that conflict at his change of plea hearing was ineffective.

But, assuming counsel was conflicted and assuming Brown did not waive that conflict, Brown would still not be entitled to habeas relief.  As noted above, to succeed on his federal constitutional claims, Brown "must establish that an actual conflict of interest adversely affected his lawyer's performance."  Cuyler, 446 U.S. at 350 (emphasis supplied).  That, Brown simply cannot do.

17

The record clearly establishes that, prior to May 6, 2008, both Brown and his retained counsel anticipated going to trial. In fact, as the trial court observed, Brown repeatedly sought continuances of the trial date so that he might further prepare and gave no indication that he was considering a guilty plea. It was only after he consulted with Attorney Hawkes on May 6th and again on May 7th that Brown changed his mind and decided to accept the State's offer and plead guilty. At the change of plea hearing, Brown's retained counsel made it clear that <u>he</u> advised Brown <u>not</u> to plead guilty and, instead, to go to trial. Plainly, Brown disregarded that advice. The only logical inference to draw is that Brown decided to plead guilty on his own or as counseled by Attorney Hawkes.

Consequently, Brown has not shown (nor is it likely he could show) that his retained counsel's advice was adversely affected by the alleged conflict, to Brown's detriment. Brown's theory is that the alleged conflict gave retained counsel an interest in having Brown plead guilty (to prevent Brown from subsequently bringing a malpractice claim). But, given retained counsel's advice to maintain his innocence, go to trial, put the State to its burden of proof, and persuade the jury that he was not guilty, Brown has failed to show that there was any adverse effect on counsel's performance from the alleged conflict. As a

result, he has not demonstrated (and the record would not support a conclusion) that his Sixth or Fourteenth Amendment rights were violated at or before the change of plea hearing.  See Cuyler, 446 U.S. at 344.

## Conclusion

As with all state habeas petitions, this court's review of the state court decision challenged by Brown is highly deferential.  And, Brown has not shown that the state supreme court's decision denying his request to withdraw his plea is suspect under either section (d)(1) or section (d)(2) of 28 U.S.C. § 2254.  But, even if that decision were subjected to a more rigorous standard of review, Brown still could not prevail on his habeas petition.  The record simply does not support the conclusion that Brown's retained counsel's alleged "conflict of interest actually affected the adequacy" of the legal advice Brown actually received and acted upon.  Cuyler, 446 U.S. at 350 (emphasis supplied).


Accordingly, Brown's amended petition for a writ of habeas corpus (document no. 5) is denied.  The State's motion for summary judgment (document no. 22) is granted.

The court declines to issue a certificate of appealability, but petitioner may seek such a certificate from the court of appeals under Federal Rule of Appellate Procedure 22. See Rule 11, Federal Rules Governing Section 2254 Cases (2010); 28 U.S.C. § 2253(c).

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

September 10, 2010

cc: Bryan Brown, pro se
 Elizabeth C. Woodcock, Esq.